IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| JAMES A. MILLER, | ) | |
| | ) | |
| Plaintiff | ) | 1:23-CV-00267-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| JOSEPH NOWAKOWSKI, LT. AND CO3 | ) | |
| DUBE, CO2 SGT JERMEY SPARKS, | ) | MEMORANDUM OPINION ON |
| JAMES JOHNSON, GARRETT BOYCE, | ) | DEFENDANTS' MOTION TO DISMISS |
| BONNI,  HEARING EXAMINER JOHN | ) | AMENDED COMPLAINT |
| DOE,  ROSENBURG, MICHELL | ) | |
| COUGHOUN,  FLOYD,  PETTIS, | ) | |
| WAUNDA, | ) | |
| | ) | IN RE ECF NO. 45 |
| Defendants | ) | |
| | ) | |

Pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 45.  For the reasons stated below, the motion will

be GRANTED in part and DENIED in part.[1]

I.      Parties and Relevant Procedural History

Plaintiff, James A. Miller, an inmate in the custody of the Pennsylvania Department of

Corrections (DOC), brings this action against twelve individuals employed by the DOC at its State

Correctional Institution at Albion (SCI-Albion), where he was previously housed.[2]   Ten

Defendants are corrections officers of varying rank: Joseph Nowakowski, Dube, Jeremy Sparks,

James Johnson, Garrett Boyce, Tamas Bonyai, who Miller identifies as "Bonni" or "Bonyi," Floyd,

_____

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[2] Miller is currently housed at the State Correctional Institution at Coal Township.

Justin Rosenberger, who Miller identifies as "Rosenburg," Pettis, and Mitchell Colquhoun.[3]  The

other two Defendants are Wanda Wofford, a nurse at SCI-Albion who Miller identifies as

"Waunda," and a "John Doe" Defendant who Miller describes as a "hearing officer." Miller's

Amended Complaint is the operative pleading before the Court.  *See* ECF No. 33.  It asserts claims

pursuant to 42 U.S.C. §1983 based on violations of Miller's Eighth Amendment rights as well as

state law claims for assault and battery, medical negligence, and general negligence.  *See* ECF 33,

¶¶67-78.

The Defendants have moved to dismiss Miller's state law tort claims based on sovereign

immunity, the medical negligence claim against Defendant Wofford based on Miller's failure to

file a Certificate of Merit as to her, and all claims against Defendant Colquhoun based on the total

absence of factual allegations against him.  *See* ECF Nos. 45 (motion), 46 (brief).  Miller has filed

a memorandum in opposition to the motion (ECF No. 60), and the matter is now ripe for

disposition.[4]

II.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a

Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the

complaint and views them in a light most favorable to the plaintiff.  *See Phillips v. Cnty. of

Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d

651, 653 (3d Cir.2003).  In making its determination under Rule 12(b)(6), the court is not opining

---

[3] Based on the allegations of Miller's Amended Complaint, it appears that Defendant Colquhoun may be an employee of the Pennsylvania State Police rather than the DOC.  *See* ECF No. 33, ¶¶ 13, 57 .

[4] Miller's brief acknowledges the absence of allegations against Colquhoun and states that he does not oppose the dismissal of claims against him.  *See* ECF 60, p. 6, ¶3. Accordingly, Defendants' motion will be granted as to all claims against Colquhoun, and the Clerk will be directed to terminate him as a Defendant.

on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

Finally, because Miller is proceeding pro se, his Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the Court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").  But "any pleading must still contain sufficient factual

allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at \*4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted).

III.    Factual Allegations

The following factual allegations of Miller's Amended Complaint are accepted as true for purposes of Defendants' motion to dismiss. These allegations generally fall into two categories: Events in August and September of 2019, culminating in certain Defendants' denial of meals to Miller, and neglect and excessive force experienced by him following his suicide attempt in September of 2019.

In August of 2019, while Miller was housed at SCI-Albion, Defendant Tamas Bonyai, a corrections officer, was escorting Miller to the shower when he used his finger to poke Miller in the buttocks. *Id*. at p. 4, ¶17. Because this had happened before, Miller filed a grievance. ECF 33, p.2, ¶19. Defendant Rosenberger, another corrections officer, then taunted Miller about the touching. *Id.* at ¶18. The next day, Defendant Nowakowski, also a corrections officer, escorted Miller to the yard, expressing his frustration that Miller was permitted yard privileges after Miller's reaction to the touching the day before. *Id.* at ¶21. Miller then called Nowakowski a "rookie," which prompted other corrections officers to laugh at Nowakowski. *Id.* at ¶22. Following this exchange, starting on September 3, 2019, and continuing until September 8, 2019, Nowakowski walked by Miller's cell with meal trays but denied Miller breakfast and lunch trays. *Id*. p. 5, ¶¶25-41. Nowakowski also verbally taunted Miller using the cell's intercom, suggesting that Miller should kill himself. *Id*. p. 5, ¶35. Miller then filed three grievances over the denial of meals and reported the conduct to Defendant Lt. Dube and Defendant Sgt. Sparks who did not intervene to stop the denial of meals. *Id*. pp. 5-6, ¶¶29, 33, 36, 37, 39, 42.

On September 8, 2019, Miller started a fire in his cell and tried to hang himself. *Id*. p. 7,
¶44. When officers entered his cell, Miller was unconscious.  *Id*. at ¶45.  Defendant Sparks
extinguished the fire, and other officers removed the noose from Miller's neck. *Id*.  When Miller
regained consciousness, Defendants Nowakowski, Johnson and Boyce were punching and kicking
him, while Defendant Pettis tried to restrain Miller.  *Id*. at ¶46. Miller then tried to jump to his
death while handcuffed and was "slammed down on his face." *Id*. at ¶¶48-49.  Defendant Dube
ordered Nowakowski to place a spit mask on Miller before taking him to be examined by
Defendant Wofford, a nurse. ECF 33, p. 7, ¶51. Miller presented with black eyes, a split lip, and a
head contusion from the beating in his cell. *Id*. at ¶52. Despite Miller having blood on his clothes
and complaining of head pain, Defendant Dube told Defendant Wofford not to remove the spit
mask while evaluating and treating Miller, which hid the extent of his injuries and caused them to
go undiagnosed and untreated. *Id*. p. 8, ¶¶53,54. ECF 60, p. 3.

A misconduct hearing was conducted by Defendant John Doe, a hearing examiner, who
found that Miller had attempted suicide. ECF 33, p.8, ¶58. During a jury trial on September 16,
2021, Nowakowski admitted that he had denied meals to Miller, and Dube testified that inmates
who do not follow rules do not eat. *Id*. at ¶¶62-65.

IV. Discussion

A. Defendants' motion to dismiss the assault and battery claims against Nowakowski,
Johnson and Boyce based on sovereign immunity will be denied because Miller's
allegations support a plausible inference that they acted outside the scope of their
employment.

"Under Pennsylvania law, an assault occurs when one acts with the intent to place another
in reasonable and immediate apprehension of harmful or offensive contact, and that act does cause
such apprehension." *Zimmerman v. Schaeffer*, 654 F.Supp.2d 226, 255 (M.D. Pa. 2009) (citing
Restatement (Second) of Torts § 21 (1977)). "A battery is an intentional offensive bodily contact."

*Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Miller alleges that Nowakowski, Johnson and Boyce punched and kicked him following his suicide attempt, including while he lay unconscious on the floor of his cell. ECF 33, p.7, ¶46. These allegations are plainly sufficient to support the essential elements of his assault and battery claims. The Defendants do not argue to the contrary. Instead, they argue that sovereign immunity shields them from liability. *See* ECF 45, p.1, ¶2.

Under 1 Pa.C.S. §2310, and subject to ten exceptions set forth in 42 Pa.C.S. §8522(b), sovereign immunity protects state employees from liability based on tortious conduct committed while acting within the scope of their duties. *See Justice v. Lombardo*, 208 A.3d 1057, 1059 (Pa. 2019). This immunity extends to intentional torts, including assault and battery. *See Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Commw. Ct. 2013) (holding that "state employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment"). *See also Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 736 (Pa. Super. Ct. 1989) (holding that sovereign immunity may even extends to criminal acts committed within the scope of employment). The ten statutory exceptions to sovereign immunity under 42 Pa.C.S. §8522(b) are:

> (1) vehicle liability, (2) medical-professional liability, (3) care, custody or control of personal property, (4) Commonwealth real estate, highways and sidewalks, (5) potholes and other dangerous conditions, (6) care, custody or control of animals, (7) liquor store sales, (8) National Guard activities, (9) toxoids and vaccines, and (10) sexual abuse.

The Defendants maintain that because their alleged actions do not fall within any of these exceptions, Miller's assault and battery claims must be dismissed. ECF 46, p. 4. Although Miller's argument in response is not entirely clear, he appears to contest that the Defendants were acting within the scope of their duties when they assaulted him. *See e.g.,* ECF 60, pp. 2-3. Ordinarily, whether a defendant acted within the scope of his or her employment is a question for the jury.

*See. Trainor v. Wellpath*, 2021 WL 39139970, \*13 (W.D. Pa. Sept. 1, 2021) (citing *Justice v. Lombardo*, 208 A.3d 1057, 1066-67 (Pa. 2019)). However, when neither the facts nor the inferences to be drawn from them are in dispute, the court may decide the issue as a matter of law. *Justice*, 208 A.3d at 1068.

In determining whether employees acted within the scope of their employment, Pennsylvania courts follow §228 of the Restatement Second of Agency. *Spitsin v. WGM Transp., Inc.*, 97 A.3d 774, 776 (Pa. Super. Ct. 2014). Section 228 provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master[;] and

(d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement Second of Agency §228.

Applying this test to Miller's allegations yields potentially different conclusions depending on the specific conduct at issue. Focusing on the Defendants' actions to restrain Miller from acts of self-harm supports a finding that they acted within their scope of employment. Responding to threats to the safety of inmates, including those created by the inmate's own actions, is certainly conduct of the kind corrections officers are hired to perform. The Defendants responded to Miller's conduct during regular working hours, and their actions served the interests of the DOC. Also, some degree of force to restrain a prisoner from self-harm is not unexpected.

7

But Miller further alleges that after he was unconscious, the Defendants punched and kicked him.  *Id*. at ¶45. If proven, a jury could readily find that the DOC would not expect corrections officers to use such excessive force and that this level of gratuitous force was not actuated, even in part, to serve the DOC.  *See Minor v. Kraynak*, 155 A.3d 114, 123 (Pa. Commw. Ct. 2017) (holding that a prison guard acts outside the scope of his duties when he or she uses "deliberate and unjustified" force on an inmate "totally divorced from any need of the officer to exert control over the prisoner") (citation omitted).  Indeed, "courts in this circuit have held that a correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification." *Abney v. Younker*, 2019 WL 7812383 *9 (M.D. Pa. 2019) (citing *R.B. v. Hollibaugh*, 2017 WL 661577 (M.D. Pa.). *See also Justice* 208 A.3d at 1070-71 (holding that a reasonable jury could decide that a state trooper was acting outside the scope of his employment when he wrestled to the ground and handcuffed a woman who, after a traffic stop, refused to get in his car and instead waited for a friend who could drive her car home); *Morris v. Zaken*, 2024 WL 2188585 at *7 (W.D. Pa. 2024) ("[C]ourts in this Circuit have held 'that intentionally tortious conduct which is 'unprovoked, unnecessary, or unjustified by security concerns or penological goals' does not fall within the scope of employment for purposes of sovereign immunity.") (citation omitted)).

The present record is limited to the allegations of Miller's Amended Complaint.  Based on those allegations, Defendants' motion to dismiss his assault and battery claim based on sovereign immunity must be denied.

   B.  Defendants' request for dismissal of the medical negligence claim against Wofford based on failure to submit a COM is procedurally defective.

Miller asserts a medical malpractice claim against Defendant Wofford, a nurse at SCI-Albion and the only Defendant alleged to have responsibility for inmate medical care.  At this stage

of the proceeding, Defendants do not challenge the sufficiency of Miller's allegations to state a malpractice claim against Wofford.[5]  Instead, they argue that this claim must be dismissed based on Miller's failure to submit a Certificate of Merit ("COM") as required by Rule 1042.3 of the Pennsylvania Rules of Civil Procedure.  Under Rule 1042.3, a plaintiff asserting a medical or professional malpractice claim under Pennsylvania law must submit a COM for each defendant who is the subject of the claim.  *See* 231 Pa. Code Rule 1042.3(a). Normally, the COM must be submitted either with the complaint or within 60 days thereafter. The COM must attest that there is a reasonable probability that the medical or other professional care described in the complaint fell outside of acceptable professional standards. The Third Circuit has held that Rule 1042.3 is substantive law that applies to professional malpractice claims based on Pennsylvania law that are asserted in federal court. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-64 (3d Cir. 2011) (citing *Erie R.R. v. Thompkins*, 304 U.S. 64 (1983)).  "[A] plaintiff's failure to comply with Rule 1042.3 requires dismissal of any malpractice claim." *Bennett v. PrimeCare Medical, Inc.*, 2018 WL 6072126, at \*10 (M.D. Pa. Sept. 14, 2018).

However, "Pennsylvania practice expressly provides plaintiffs with notice of Rule 1042.3's requirements and an opportunity to cure any failure to file a certificate of merit before a matter is dismissed." *TranSystems Corp. v. Hughes Associates, Inc.*, 2014 WL 6674421, at \*5 (M.D. Pa. Nov. 24, 2014). Rule 1042.6 of the Pennsylvania Rules of Civil Procedure states:

> (a) ... a defendant seeking to enter a judgment of non pros under Rule 1042.7(a) shall file a written notice of intention to file the praecipe and serve it on the party's attorney of record or on the

---

[5] To support such a claim, Miller must establish the following elements: "(1) the [medical professional] owed a duty to the patient; (2) the [medical professional] breached the duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm." *Grant v. Pennsylvania Dep't of Corr.*, 2021 WL 4312451, at \*12 (W.D. Pa. Aug. 6, 2021) (quoting *Doe v. Hosp. of Univ. of Pa.*, 546 F. Supp. 3d 336 (E.D. Pa. 2021)), *report and recommendation adopted*, 2021 WL 3828146 (W.D. Pa. Aug. 27, 2021).

> party if unrepresented, no sooner than the thirty-first day after
> the filing of the complaint.

Pa. R. Civ. P. 1042.6(a). Under this rule, no judgment may be entered against a plaintiff for failure to timely file a COM unless the defendant has complied with its notice requirements. *Schmigel v. Uchal*, 800 F.3d 113, 124 (3d Cir. 2015) ("The condition of thirty days' notice prior to seeking dismissal of an action for failure to comply with the COM regime is substantive and must be applied in federal court."). Defendants have not alleged, let alone demonstrated, that they provided the required notice to Miller under Rule 1042.6(a). Accordingly, their motion to dismiss the medical negligence claim against Wofford based on the absence of a COM must be denied. This denial, however, is without prejudice to Defendants' right to reassert this defense upon a proper record.

   C. Miller's general negligence claims against Defendants Sparks, Pettis, Dube, Nowakowski, Johnson, and Boyce will be dismissed based on sovereign immunity, his medical negligence claim against Defendant Dube will be dismissed because Dube is not a medical professional, but his medical negligence claim against Defendant Wofford will proceed.

Miller's Amended Complaint appears to assert a general negligence claim against Defendants Sparks, Pettis, Dube, Nowakowski, Johnson, and Boyce based on their actions during and after his suicide attempt. "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (2009) (internal citations and quotation marks omitted). Under Pennsylvania law, a plaintiff asserting a negligence claim must allege facts to support "four basic elements": "duty, breach, causation, and damages." *Loughran v. The Phillies*, 888 A.2d 872, 874 (Pa. Super. 2005). Here, Miller claims that Sparks, Pettis, Dube, Nowakowski, Johnson, and Boyce performed their duties as corrections officers in a careless manner or without due care. This claim is not based on alleged intentional misconduct and, thus, it must be distinguished from Miller's

10

assault and battery claim.    Intentional misconduct supporting an assault and battery claim potentially falls outside of a corrections officer's scope of employment because it is not actuated to serve the employer.  A negligence claim presumes that the corrections officer is performing a duty of his employment, albeit without due care.  As such, the officer's negligent conduct cannot be considered outside the scope of his or her employment.  Furthermore, none of the ten exceptions to sovereign immunity listed in 42 Pa.C.S.A. § 8522(b) applies to Miller's negligence claims. While a negligence claim will survive sovereign immunity if it involves at least one of the ten exceptions, *see, e.g., Celec v. Edinboro Univ.*, 132 F. Supp. 3d 651, 670 (W.D. Pa. 2015) (holding that sovereign immunity does not apply to claim of negligent "care, custody or control of personal property in the possession or control of Commonwealth parties"), Miller's allegations do not involve the subject matter of any exception.  Defendant Sparks' alleged negligence consisted of extinguishing the fire Miller set in his cell, which caused Miller to cough and choke on the extinguisher's "remnants."    ECF 33, p. 7, ¶45, 50. Similarly, Defendant Pettis' only alleged involvement was his act of handcuffing Miller. *Id*. at ¶46. Miller does not allege that Pettis used excessive force or caused him injury when applying the handcuffs. Miller alleges that Defendant Dube's negligence consisted of telling "defendant Nowakowski to put a spit mask over my head." *Id*., ¶51.  Nowakowski, Johnson and Boyce are alleged to have failed to use reasonable care when removing the noose from around Miller's neck and further restraining Miller after his suicide attempts. *Id*. ¶¶46-52. Because these allegations do not implicate conduct outside a corrections officer's scope of employment or conduct covered by an exception to sovereign immunity, Miller's general negligence claim against Sparks, Pettis, Dube, Nowakowski, Johnson, and Boyce will be dismissed.

It appears that Miller may also be asserting a medical malpractice claim against Defendant Dube. Miller acknowledges that Dube is a corrections officer, not a member of the prison medical staff. Nonmedical personnel such as corrections officers and healthcare administrators are treated differently for purposes of claims based on allegations of medical neglect. *See, e.g., Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (standard for deliberate indifference for purposes of a denial of medical care under the Eighth Amendment claims is varies depending upon whether the defendant is a medical defendant or a nonmedical defendant). Here, any medical malpractice claim against Dube under Pennsylvania law necessarily fails because he is not a medical professional and, therefore, he could not form a doctor or other medical provider relationship with Dube. Absent such a relationship, Pennsylvania law does not recognize a duty of reasonable medical care. *Long v. Ostroff*, 2004 PA Super 240, ¶ 9, 854 A.2d 524, 528 (2004). In turn, the absence of such a duty precludes a medical malpractice or neglect claim.[6] *Id*.

In contrast, Defendant Wofford is alleged to be a medical provider (nurse), which makes her potentially subject to a medical negligence claim. And the medical negligence claim against Wofford falls within the "medical-professional" exception to sovereign immunity. *See* 42 Pa.C.S. §8522(b)(2). Accordingly, Defendants' motion to dismiss will be denied as to this claim against Wofford.

V.    Conclusion

Defendants' motion to dismiss the Amended Complaint will be granted as to Miller's state law claims for (1) general negligence against Defendants Sparks, Pettis, Dube, Nowakowski, Johnson, and Boyce, and (2) medical negligence against Defendant Dube. These claims will be

---

[6] Dube may be subject to a claim under the Eighth Amendment if it is proven that he demonstrated deliberate indifference to Miller's serious medical need, but the viability of this claim is not before the Court as Defendants have not moved to dismiss any of Miller's Eighth Amendment claims.

dismissed with prejudice because any further amendment would be futile based on the bar of sovereign immunity and Dube's status as a nonmedical prison staff member.  Defendants' motion to dismiss the Amended Complaint will be denied as to Miller's assault and battery claims against Defendants Nowakowski, Johnson, and Boyce and his medical negligence claim against Defendant Wofford.  Defendants may reassert their request for dismissal of the medical neglect claim against Defendant Wofford upon a proper record demonstrating that they have provided the notice required under Rule 1042.6 of the Pennsylvania Rules of Civil Procedure.[7]

An order follows.

DATED this 14th day of July, 2025.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[7] Miller's various Eighth Amendment claims will also proceed to discovery as Defendants' motion to dismiss does not challenge the legal sufficiency of these claims at the pleadings stage of the case.

13